FILED BY _____ D.C.

05 JUL 15 PM 2: 15

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED AUTO GROUP, INC.,           )
                                   )
          Plaintiff,               )
                                   )
vs.                                )        No. 04-2802 D/P
                                   )
ADAM EWING and ANDREW BARBEE,      )
                                   )
          Defendants.              )
                                   )

## ORDER GRANTING IN PART PLAINTIFF'S MOTION
## TO COMPEL DEFENDANTS' DEPOSITION

Before the court is Plaintiff United Auto Group's Motion to Compel Defendants' Deposition, filed March 3, 2005 (dkt #46). Defendants Adam Ewing and Andrew Barbee filed a response on March 17, 2005. All parties participated in a motion hearing on April 6, 2005. At that hearing, the court requested that the parties file supplemental briefs. The plaintiff and defendants filed supplemental briefs on April 15 and April 25, respectively. For the following reasons, the motion to compel is GRANTED in part.

### I.  BACKGROUND

This is one of three cases involving United Auto Group ("UAG") and Adam Ewing and Andrew Barbee. Defendants Ewing and Barbee are former employees of Covington Pike Toyota, a car dealership located in Memphis, Tennessee and owned by UAG. Ewing and Barbee were

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _____

formerly plaintiffs in an employment discrimination case filed in this district, styled Alexander v. United Auto Group, No. 01-2096 (W.D. Tenn. filed Feb. 5, 2001).  The Alexander case settled prior to trial, and as part of the settlement agreement, Ewing and Barbee agreed not to do or say anything that would hurt or prejudice UAG's reputation or goodwill.

After the settlement in Alexander, Ewing and Barbee agreed to serve as paid expert witnesses in a consumer fraud class action, styled James v. United Auto Group, No. 01-1122-1 (Shelby Co. Chancery Ct.), which is currently pending in Tennessee state court. Their testimony in James apparently relates to the business practices of UAG.   Additionally, Defendants participated in interviews on the investigative television show 60 Minutes and answered questions regarding their interaction with consumers while they were employees of the car dealership.   In this present lawsuit, UAG alleges Defendants violated their settlement agreement in Alexander by testifying as expert witnesses in James and appearing on 60 Minutes.

In the present motion to compel, UAG seeks an order requiring Defendants to appear for their depositions and to answer, among other things, questions related to their testimony and work as witnesses in the James case.  UAG noticed their deposition for February 22 and 23, 2005, but it was cancelled shortly before the noticed date.  Defendants, generally, do not oppose being deposed,

-2-

but they argue that questions relating to their testimony in <u>James</u>, including conversations and documents shared with their attorney James Andrews, are protected by the attorney-client privilege, the common interest privilege, and the work product doctrine.

Defendants' privilege and work product arguments stem from Andrews's representation of Defendants as witnesses in the <u>James</u> case. Andrews represents the class of plaintiffs in <u>James</u> and served as counsel for Ewing and Barbee on the issue of whether their testimony would violate the settlement agreement.[1]  They argue that any communications between Defendants and Andrews in connection with the <u>James</u> case is protected by privilege.  In support of this contention, Defendants rely on the <u>James</u> court's order denying a motion filed by the <u>James</u> defendants to compel Ewing and Barbee to answer questions at their depositions and questions asked during a May 7, 2003 hearing in state court.  The court determined that Defendants had an attorney-client privilege with attorney Andrews, and that "information conveyed to Plaintiff's Counsel regarding Defendants' business practices is privileged and confidential." (<u>See James v. United Auto Group et al.</u>, CH-00-1934-I (Shelby County Chancery Court)(Order Denying Defendants' Motion to Compel filed May 12, 2003).  Defendants assert that this state court decision is governed by the Full Faith

---

[1]Ewing and Barbee were represented by another attorney in the <u>Alexander</u> case.

-3-

and Credit Act, 28 U.S.C. § 1738, and that the <u>James</u> court's decision must be given preclusive effect in this federal action.[2]

UAG contends, however, that the Full Faith and Credit Act is inapplicable for several reasons. First, it argues that the scope of permissible areas of testimony in the <u>James</u> case was not "material" to the ultimate issues in that case. Second, UAG suggests that the <u>James</u> court intended only to protect Defendants' rights to testify pursuant to a subpoena, and that the court's decision in no way barred UAG from pursuing a claim against Ewing and Barbee based on their decision to testify in the <u>James</u> litigation. Third, UAG claims that it did not have a fair and full opportunity to litigate Defendants' breach of settlement agreement claim in the <u>James</u> case. Finally, UAG maintains that Defendants' designation as expert witnesses after the order on the motion to compel effectively superseded the state court's May 12 order.

## II. ANALYSIS

### A. Full Faith and Credit Act 28 U.S.C. § 1738

28 U.S.C. § 1738 governs the application of the doctrines of res judicata and collateral estoppel. The statute provides that "judicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in

---

[2]Defense counsel cited this statute at the April 5 hearing, but made no mention of it in the response to the motion to compel or in its supplemental brief filed with the court.

courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. Generally, when considering whether the judgment of a state court will have either type of preclusive effect on a subsequent action brought in federal court, the Full Faith and Credit Act requires the federal court to give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgement. See Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); Allen v. McCurry, 449 U.S. 90, 96 (1980); see also Heyliger v. State Univ. and Community College System of Tenn., 126 F.3d 849, 851-52 (6th Cir. 1997).

Claim preclusion, or res judicata, bars a second action when the same parties have previously litigated the same claim to a final judgment on the merits in the first proceeding. Hutcherson v. Lauderdale County, 326 F.3d 747, 758 (6th Cir. 2003) (outlining four elements under Tennessee law that must be established for res judicata); Drummond v. Comm'r of Soc. Sec., 126 F.3d 837, 840 (6th Cir. 1997); Shelley v. Gipson, 400 S.W.2d 709, 714 (Tenn. 1966). Issue preclusion, or collateral estoppel, bars relitigation of an issue of fact or law which was actually litigated in the former suit and which was necessary to the judgment, in a suit on a different cause of action involving the same parties or their privies. Drummond, 126 F.3d at 840; Shelley, 400 S.W.2d at 714.

Because the parties in the present case are different from

-5-

those in the <u>James</u> case, and there has not been a final judgment on the merits in <u>James</u>, claim preclusion does not apply.  <u>See</u> <u>Drummond</u>, 126 F.3d at 840; <u>Shelley</u>, 400 S.W.2d at 714.  With respect to issue preclusion, in deciding what if any preclusive effect this court must give to the <u>James</u> court's May 12, 2003 order, this court looks to Tennessee law.  Tennessee law provides that once an issue has been determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties in subsequent litigation, even when the claims or causes of action are different.  <u>See</u> <u>Gibson</u> <u>v. Trant</u>, 58 S.W.3d 103, 113 (Tenn. 2001); <u>Beaty v. McGraw</u>, 15 S.W.3d 819, 824 (Tenn. Ct. App. 1998).

In order for the Tennessee doctrine of collateral estoppel to apply, the defendants must demonstrate that (1) the factual or legal issue sought to be precluded is identical to the issue decided in the earlier suit; (2) the issue sought to be precluded was actually litigated and decided on its merits in the earlier suit; (3) the judgment in the earlier suit has become final; (4) the party against whom collateral estoppel is asserted was either a party or is in privity with a party to the earlier suit; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded.  <u>Beaty</u>, 15 S.W.3d at 824-25.  The party asserting the collateral estoppel doctrine has the burden of

establishing these elements. <u>Beaty</u>, 15 S.W.3d at 824; <u>Dickerson v. Godfrey</u>, 825 S.W.2d 692, 695 (Tenn. 1992).

This court finds that Defendants Ewing and Barbee have failed to meet their burden of establishing that the factual or legal issue sought to be precluded in the present case is identical to the issue decided in <u>James</u>.[3] By merely relying on the Chancellor's ruling in <u>James</u>, the Defendants have not demonstrated that the state court addressed the identical issue that is now presented to this court. In his order, the Chancellor stated, "information which [Ewing and Barbee] had communicated to [Andrews] regarding, *inter alia*, [UAG's] business practices while they were employed at Covington Pike Toyota" was "privileged and confidential." (5/12/03 Order). The court apparently based its ruling on the fact that Andrews represented Ewing and Barbee as witnesses – but the court's order provides no further details than that. It is far from clear what privilege issues were presented to the state court, what areas of inquiry were before that court, and what the bases were for that

---

[3]UAG also contends that collateral estoppel is not applicable in this case because case law requires the prior decision to be necessary and material to that court's decision. The cases cited by UAG, however, focus on the earlier decisions' use of dicta. <u>See Dickerson</u>, 825 S.W.2d at 695; <u>Marlene Indus. Corp. v. NLRB</u>, 712 F.2d 1011, 1016 (6th Cir. 1983)("The determination of an issue in an earlier proceeding must be essential to the judgment, it cannot be dicta."); <u>Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.</u>, 126 F.3d 849, 853 (6th Cir. 1997); <u>see also Shelley v. Gipson</u>, 400 S.W.2d 709, 714 (Tenn. 1966). The <u>James</u> court expressly made a finding of privilege, and the ruling was certainly not dicta.

-7-

court's conclusions.  Therefore, because the Defendants carry the burden of establishing all elements of collateral estoppel, their failure to meet that burden requires this court to conclude that the doctrine does not apply.

Moreover, it appears that there has not yet been a final judgment in the state case.  "In Tennessee, a judgment is final 'when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court.'" <u>Richardson v. Tennessee Bd. of Dentistry</u>, 913 S.W.2d 446, 460 (Tenn. 1995)(quoting <u>Saunders v. Metro. Gov't of Nashville & Davidson County</u>, 383 S.W.2d 28, 31 (1964)).  Therefore, the Defendants Full Faith and Credit argument fails on this basis as well.

**B.   Attorney-Client Privilege**

In diversity cases such as this, the limits of any privilege must be "determined in accordance with state law."  Fed. R. Evid. 501.  The person claiming attorney-client privilege has the burden of establishing the existence of the privilege.  <u>Gibson v. Richardson</u>, No. 2002-3027, 2003 WL 135054, at *3 (Tenn. Ct. App. Jan. 17, 2003)(unpublished) (citing <u>Hawkins v. Hart</u>, 1998 WL 272926, at *9 (Tenn. Ct. App. May 29, 1998)(unpublished)).  In Tennessee, the privilege is established by the following factors:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his

client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Humphreys, Hutcheson & Moseley v. Donovan, 568 F.Supp. 161, 175 (M.D. Tenn. 1983)(construing Tenn. Code Ann. § 23-3-105). The privilege encourages full and frank communications between attorneys and their clients. Boyd v. Comdata Net., Inc., 88 S.W.3d 203, 212 (Tenn. Ct. App. 2002)(citing Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).

In determining whether the attorney-client privilege applies in the present case, the court finds that Defendants Ewing and Barbee's relationship with attorney Andrews stems from (1) their roles as *clients* seeking legal advice from Andrews regarding whether their involvement in the James case would violate their settlement agreement in Alexander, and (2) their roles as *witnesses* who provided Andrews with information about UAG to assist him in preparing his case as plaintiffs' counsel. With respect to the former situation, Defendants communicated with Andrews for the purpose of obtaining legal advice about the possibility of breaching their Alexander settlement agreement. In that context, Defendants were Andrews's clients, and their communications with Andrews would be protected by the attorney-client privilege.[4]

---

[4]UAG apparently does not dispute this position, and has stated that it will not ask questions of Defendants regarding

However, with respect to the latter situation, Andrews acts as counsel for the class plaintiffs in James and Defendants, in their capacities as witnesses, allegedly provided information to Andrews to assist him in prosecuting the case. Communications between Defendants Ewing and Barbee in that situation would not be protected by the attorney-client privilege, since Defendants were not communicating with Andrews in their capacities as "clients," but rather as witnesses. Protection of these communications would not serve the purpose of encouraging full and frank communications between an attorney and his or her client. Therefore, the attorney-client privilege does not protect these communications.

## C.    The Common Interest Doctrine

Defendants also rely on the common interest doctrine, "which expands the coverage of the attorney-client privilege where two or more clients with a common interest in a matter are represented by separate lawyers and agree to exchange information concerning the matter." Reed v. Baxter, 134 F.3d 351, 357 (6th Cir. 1998). It serves as "an exception to the general rule that communications made in the presence of or shared with third parties are not protected by the attorney-client privilege." Boyd, 88 S.W.3d at 213-14. Because the doctrine serves to limit discoverable information, courts narrowly construe the doctrine. See Ferko v.

---

communications between Andrews and Defendants pertaining to whether their testimony in James would breach their settlement agreement.

-10-

NASCAR, Inc., 219 F.R.D. 396, 402 (E.D. Tex. 2003).

In order for the common interest privilege to apply, the parties to whom disclosure was made must have identical legal interests. See Dexia Credit Local v. Rogan, No. 02-8288, 2004 WL 3119026, at *5 (N.D. Ill. Dec. 21, 2004)(unpublished); Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 347 (N.D. Ohio 1999); N. River Ins. Co. v. Columbia Cas. Co., No. 90-2518, 1995 WL 5792, at *3 (S.D.N.Y. Jan. 5, 1995)(unpublished). Thus, it would apply in the following relationships: co-defendants; insurer and insured; and patentee and licensee. See United States v. Mass. Inst. of Tech., 129 F.3d 681, 685 & n. 4 (1st Cir. 1997)(collecting cases). Although Defendants may have a "demonstrated history of opposing the dealer reserve practice," they do not share an identical legal interest with the class plaintiffs in James. The class plaintiffs are consumers, whereas Defendants are witnesses and former car dealership employees. Thus, the common interest doctrine does not apply to communications between Ewing and Barbee and attorney Andrews.

## D.   Work Product

Finally, Defendants claim that communications and documents shared with Andrews are protected by the work product doctrine. Unlike the attorney-client privilege, the applicability of the work product doctrine in diversity cases is governed by the federal rules. See Fed. R. Civ. P. 26(b)(3); Royal Surplus Lines Ins. v.

<u>Sofamor Danek Group</u>, 190 F.R.D. 463, 481 (W.D. Tenn. 1999)(citing <u>United Coal Cos. v. Powell Constr.</u>, 839 F.2d 958, 966 (3d Cir. 1988)).

Federal Rule of Civil Procedure 26(b)(3) protects against the discovery of documents and tangible things made in the anticipation of litigation by or for a party or by or for the party's representative unless the party seeking discovery demonstrates substantial need for the materials and is unable to get the information without undue hardship. The doctrine creates a zone of privacy and protection for an attorney's preparation of a case. <u>See</u> <u>Hickman v. Taylor</u>, 329 U.S. 495, 510-11 (1947).

It is unclear what, if any, documents exist that may be protected by the work product doctrine. To the court's knowledge, Defendants have not provided UAG with a privilege log for these documents. Thus, to the extent Defendants claim documents are protected work product, they are ordered to provide UAG with a privilege log for these documents within fourteen (14) days from the date of this order.

**E.   Sanctions**

Finally, UAG has requested sanctions against the Defendants due to their unilateral decision to not appear for their depositions. Defendants do not dispute that their depositions would cover many topics that have nothing to do with the issues raised in this motion. The court concludes that, at minimum,

-12-

Defendants certainly could have gone forward with their depositions on other areas of inquiry, and could have at least answered questions to establish a foundation for their assertions of privilege without revealing the substance of communications. Although the Defendants have stated that appearing for more than one deposition would work a financial hardship on them, the court finds that the need for discovery far outweighs any such purported financial hardship to Defendants.

Although the court has serious concerns about Defendants' conduct in failing to appear for their properly noticed depositions, the court will DENY the request for sanctions at this time. If, however, Defendants do not timely comply with this order, the court will reconsider UAG's request.[5]

### III. CONCLUSION

For the reasons above, UAG's Motion to Compel Defendants' Deposition is GRANTED in part. Defendants shall appear for their depositions within thirty (30) days from the date of this order.

---

[5]Defendants have indicated that they may consider filing an appeal of this court's order with the District Judge should the court grant UAG's motion. Should Defendants file an appeal, they are nevertheless required to appear for their depositions to answer questions about matters unrelated to this motion.

IT IS SO ORDERED.

_____
TU M. PHAM
United States Magistrate Judge


_____
Date  July 15, 2005

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 86 in case 2:04-CV-02802 was distributed by fax, mail, or direct printing on July 18, 2005 to the parties listed.

---

A. James Andrews
ANDREWS & HUDSON,P.C.
606 Main Avenue
Suite 202
Knoxville, TN 37902

Ricky E. Wilkins
LAW OFFICE OF RICKY E. WILKINS
119 S. Main St.
Ste. 700
Memphis, TN 38103

Karl A. Schledwitz
LAW OFFICE OF DOUGLAS R. BEATY
8130 Country Village Dr.
Ste. 101
Memphis, TN 38016

Marc L. Newman
MILLER & SHEA P.C.
950 West University Drive
Suite 300
Rochester, MI 48307

E. Powell Miller
MILLER SHEA, P.C.
950 West University Drive
Suite 300
Rochester, MI 48307

Sharon Harless Loy
LAW OFFICE OF RICKY E. WILKINS
119 S. Main St.
Ste. 700
Memphis, TN 38103

Perry A. Craft
CRAFT & SHEPPARD, PLC
214 Centerview Dr.
Ste. 233
Brentwood, TN 37027

Edward M. Bearman
BRANSON & BEARMAN
780 Ridge Lake Blvd.
Ste. 202
Memphis, TN 38120

Honorable Bernice Donald
US DISTRICT COURT